UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Yee Yang Vue,                                              Civil No. 13-357 (ADM/FLN)

Plaintiff,

v.                                    **REPORT AND RECOMMENDATION**

Carolyn Colvin,
Commissioner of Social Security,

Defendant.

_____

Gregg Nelson and Thomas Krause for Plaintiff.
Ann Bildtsen, Assistant United States Attorney, for Defendant.

_____

Plaintiff Yee Yang Vue (Vue) seeks judicial review of the final decision of the

Commissioner of Social Security (Commissioner) denying her application for disability insurance

benefits and supplemental security income. This matter was referred to the undersigned United

States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local

Rule 72.1.  This Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g). The parties

have submitted cross motions for summary judgment. ECF Nos. 11, 17. For the reasons discussed

below, this Court recommends that the Commissioner's decision be **AFFIRMED** and the case be

**DISMISSED WITH PREJUDICE.**

## I.   INTRODUCTION

Vue filed an application for supplemental security income and disability benefits on March

19, 2010.[1] Administrative Record [hereinafter "AR"] 14, ECF No. 10. Vue alleged November 30,

---

[1]

Vue's application was based on both physical and mental impairments. However,

2008 as the onset date of her disability. *Id*. The Social Security Administration initially denied Vue's application and again denied the application upon reconsideration. AR 75-79. Vue filed a request for a hearing before an Administrative Law Judge (ALJ), which was held on November 29, 2011. AR 14, 36. ALJ Diane Townsend-Anderson denied Vue's application for disability benefits on January 24, 2012. AR 14-30. The Appeals Council denied Vue's request for review in December 2012, making the ALJ's decision the Commissioner's final decision. AR 1-3. Vue commenced this action on February 13, 2013, seeking reversal of the ALJ's decision, or, alternatively, a remand for further proceedings.  ECF No. 1.

## II.    STATEMENT OF FACTS

### A.    Background

Vue was born in Laos in 1968. AR 338-39. At the age of ten, she fled to Thailand as a war refugee. AR 339. Vue lived in the Ban Vinai refugee camp before immigrating to the United States in 1981 with her two oldest children. AR 338. After coming to the United States, Vue opened a small grocery store with her husband. AR 339. The store closed at some point in 2008. *Id*. Vue has ten children, seven of whom still live at home. AR 40. Vue gave birth to her youngest child in mid-2009. AR 481. Around that same time, Vue and her husband separated and Vue began to struggle with depression. AR 481, 576. By 2010, the family encountered financial difficulty when their business closed. AR 481.

### B.    Medical Opinion Evidence

---

"Ms. Vue does not dispute the ALJ's findings regarding Ms. Vue's physical limitations . . . . Ms. Vue, however, strongly disagrees with the ALJ's conclusions regarding Ms. Vue's mental limitations." Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 12 at 3-4. Accordingly, this Court will focus solely on the ALJ's analysis regarding Vue's mental impairments.

1.     **Dr. Searle**

Vue first met with psychologist Dr. Maradeth Searle in February 2010. AR 338. Dr. Searle provided Vue with treatment on dozens of occasions over the following year and a half. AR 334-337, 443-480.

Dr. Searle performed an intake psychological assessment of Vue on February 9, 2010. AR 481. Vue reported being depressed since the pregnancy of her last child and that, as the family was experiencing financial hardships, she was concerned about their future. *Id*. Vue stated that she was not eating or sleeping well, missed the social connections she experienced when previously working, and continued to mourn the loss of her mother. *Id*. Dr. Searle wrote the Vue "was tearful when she said that before she could do a lot and now she doesn't feel that she can do anything." *Id*. Vue reported that she did not have suicidal thoughts or engage in actions of self-harm. *Id*. At the time of the February 2010 assessment, Vue's medication regime consisted of Naproxin (20 mg) and Omeprazole (500 mg). *Id*.

On February 23, 2010, Dr. Searle indicated that Vue was still "very sad" and "didn't want to see anyone." AR 480. Dr. Searle identified Vue's mood as dysphoric, her attitude as cooperative, and her thought process as normal. *Id*. In March 2010, Dr. Searle focused on providing housing support to Vue, discussing how Vue could seek assistance through the St. Paul Public Housing Office. AR 478. At that time, Dr. Searle identified Vue's mood as flat, her attitude as cooperative, her emotional reactivity as low, and her thought process as normal. *Id*.

Dr. Searle reported in May 2010 that Vue had recently missed her medications and taken three doses at once, resulting in Vue sleeping for 23 hours uninterrupted. AR 477. Dr. Searle cautioned Vue to take her medication as prescribed. *Id*. From June 2010 to December 2010, Dr.

Searle consistently noted that Vue experienced symptoms of depression and anxiety. AR 468, 469, 470, 471, 472, 473, 476.

Later progress notes indicate some symptom improvement. In March 2011, Dr. Searle identified Vue's affect as "less withdrawn" and  wrote that "[Vue] is more hopeful, talked about changing weather and what she enjoys doing . . . grocery shopping with her daughter [and] going to the flea market." AR 447. In May and June 2011, Dr. Searle wrote that Vue frequently walked around Lake Phalen, consistently ate three meals a day, and experienced less sleep interruption with the assistance of medication. AR 459, 461, 463, 465. Progress notes from June 22, 2011 and July 27, 2011 label Vue's affect as "appropriate" and her mood as "calm, focused." AR 463-66. Throughout Dr. Searle's treatment history of Vue, Dr. Searle stated that Vue's depression resulted in "mild" to "moderate functional issues." AR 457, 459, 461, 463, 465.

Dr. Searle completed a medical source statement for Vue on November 24, 2011. AR 592-597. Dr. Searle concluded that Vue was incapable of meeting the mental demands of unskilled and semi-skilled work, except for the ability to "ask simple questions or request assistance." AR 594-95. Specifically, Dr. Searle indicated that Vue would be unable to maintain attention for two hour segments, sustain regular attendance and punctuality, keep an ordinary routine without special supervision or complete a normal workday or workweek without interruption due to psychological symptoms. AR 595.

### 2.      Certified Nurse Practitioner (CNP) Thersleff

CNP Carol Thersleff saw Vue for six therapy sessions from March to October 2011. AR 576 - 590. CNP Thersleff's initial intake form, dated March 10, 2011, states that Vue suffered increased depressive symptoms since her husband left two years. AR 576. Vue reported experiencing anxiety,

restlessness, difficulty with concentration, fatigabililty, irritability and sleep disturbance. AR 577. Additionally, CNP Thersleff identified Vue as having suicidal thoughts, but no plan. *Id*. CNP Thersleff placed Vue on a medication regime of Trazodone and Sertaline. AR 580.

CNP Thersleff's treatment notes in April, June, July, and August of 2011 indicate several improvements in Vue's symptoms. In each report, CNP Thersleff identified Vue's behavior as cooperative, speech as logical, cognition as oriented times three, mood as neutral, and affect as appropriate. AR 581-84. CNP Thersleff increased Vue's dose of Sertaline in April 2011, and the next progress note from June 2011 specifically stated that Vue's mood improved with the medication increase. AR 583-84. In her last report dated August 11, 2011, CNP Thersleff wrote that Vue continued to be "overwhelmed by many problems," but identified her mood as "neutral" and affect as "appropriate." AR 581.

On October 20, 2011, CNP Thersleff completed a medical source statement based on her previous treatment of Vue. AR 585. CNP Thersleff determined that Vue suffered from the following symptoms: pervasive loss of interest in almost all activities, decreased energy, thoughts of suicide, feelings of guilt or worthlessness, generalized persistent anxiety, difficulty thinking or concentrating, distractibility, emotional withdrawal or isolation, memory impairment, and sleep disturbance. AR 586. The medical source statement additionally evaluated the mental abilities and aptitudes needed to do semi-skilled and unskilled work; CNP Thersleff classified Vue has either being "unable to meet competitive standards" or "seriously limited" in every category. AR 587-88.

### 3.    Drs. Frederiksen and Nelsen

Non-examining state agency consultants also reviewed Vue's records. In June 2010, Dr. Sharon Frederiksen completed a mental residual functional capacity assessment of Vue based on a

review of Dr. Searle's treatment notes. AR 379. Dr. Frederiksen evaluated Vue as either "not significantly limited" or "moderately limited" in several areas related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. AR 379-380. In making a functional capacity assessment, Dr. Frederiksen concluded that Vue could carry out routine, repetitive tasks; handle brief and superficial contact with co-workers; manage ordinary levels of supervision found in a customary work setting; handle the routine stresses of a routine, repetitive work setting; and that she retains the sustained capacity to persist at an adequate pace sufficient to meet the production quotas of a routine work setting. AR 381. In October 2010, Dr. R. Owen Nelsen reviewed Dr. Frederiksen's conclusion and affirmed his findings. AR 416-418.

**C.     Administrative Hearing**

The administrative hearing took place on November 29, 2011. AR 36. Attorney Gregg Nelson represented Vue at the hearing and Vue testified on her own behalf with the assistance of a Hmong interpreter. AR 38-39.

**1.     Vue's Testimony**

At the hearing, Vue stated that she lives at home with seven of her ten children. AR 40. Vue was unable to provide her exact address. *Id*. The older children are primarily responsible for caring for the younger children. *Id*. When the older children are unable to provide childcare, Vue stays home with her youngest child, but is somewhat limited in how much care she can provide. AR 42. Vue reported that she took a few ESL classes, but has no fluency in the English language. She also stated that she has limited reading and writing abilities in the Hmong language. AR 41. When questioned about her depression, Vue commented that the depression started with the birth of her last child and that her condition deteriorated to the point where her husband no longer wanted to live

6

with her. AR 44. Vue remarked that, because of her depression, "everything is difficult." AR 43.

### 3.     Medical Expert's Testimony

Dr. Robert J. Beck appeared as the medical expert at the hearing. AR 46. Dr. Beck exclusively evaluated Vue's physical impairments and concluded that her back pain due to degenerative disc disease would limit her work activity to mainly sedentary tasks. AR 46-48.

### 2.     Vocational Expert's Testimony

Vocational expert L. David Russell testified at the hearing. AR 38. Russell submitted a summary of Vue's relevant past work, which included electronic assembler, babysitter, and retail store manager. AR 227. Based on the residual functional capacity stated by the ALJ at the hearing, Russell testified that Vue was unable to perform her previous work. AR 49. Russell stated that an individual with Vue's limitations could perform other work in the national economy such as assembly, optical goods worker, and polisher. *Id*. Russell further testified that if a similar individual was unable to meet competitive standards in maintaining attention, sustaining routine, working with others, making simple work-related decisions, traveling to unfamiliar places and maintaining work attendance (absent more than four days a month), then that individual could not hold employment in the national economy. AR 49-50.

### 4.     The ALJ's Decision

To determine whether Vue was disabled, the ALJ followed the five-step sequential process established by the Social Security Administration, outlined in 20 C.F.R. § 404.1520. The claimant bears the initial burden of proof at the first four steps of the process. *See Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). The first step requires a claimant to show that she is not engaged in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(I). If step one is satisfied, the examination proceeds to step two, where the claimant must show that she has a severe medically-determinable impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii). Upon establishing a severe impairment, the process moves to step three which requires an evaluation of whether the impairments satisfy, or are medically equal, to the criteria of one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (Listings). 20 C.F.R. §§ 404.1520(a)(4)(iii). If the claimant is shown to have a listed impairment, then she will be found disabled. *Id.* If the severe impairment does not match a listed impairment, the inquiry proceeds to step four. At step four, the claimant must prove her residual functional capacity (RFC) and show that she cannot perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant shows that she can no longer engage in past relevant work, the process moves to step five where the burden of proof shifts to the Commissioner. 20 C.F.R. § 404.1520(a)(4)(v). At this final step, the Commissioner is required to show that the claimant can perform other work existing in significant numbers in the national economy. *Id.*

Here, the ALJ first determined that Vue had not engaged in substantial gainful activity since the alleged onset of her disability in November 2008. AR 16. At the second step, the ALJ found Vue to have the following severe impairments: carpal tunnel syndrome bilaterally, chronic back pain secondary to degenerative disc disease, chronic neck pain secondary to degenerative disc disease, pain disorder, and major depressive disorder with anxiety features. AR 16. Pursuant to the third step, the ALJ concluded that Vue's impairments did not meet the requirements under any listed impairments. The ALJ determined Vue's residual capacity as the following:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except limited to brief and superficial contact with others and limited to unskilled work where there is no requirement for the English language, with instruction through visual demonstration, with no work

at heights, no climbing of ladders or scaffolding, no work around dangerous or hazardous equipment or machinery, no power gripping, twisting, or pounding, only occasional overhead work, and with the ability to perform frequent but not constant fine fingering.

AR 20. At step four, the ALJ determined that Vue could not perform her past relevant work as a electronics assembler, babysitter, and retail store manager. AR 28. At the final step, the ALJ, relying on testimony from a vocational expert, concluded that Vue could perform other work that existed in the national economy, such as assembly, optical goods worker, and polisher. AR 29-30. Accordingly, the ALJ resolved that Vue was not disabled and therefore not entitled to benefits. AR 30.

## III.   STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial

evidence means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently. *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. Therefore, the Court's review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

### IV.   ANALYSIS

Vue argues that the ALJ erred by (1) failing to properly evaluate the treating and examining

opinions of Dr. Searle and CNP Thersleff and (2) relying on state agency psychological consultants' opinions when the consultants never examined Vue and did not review Vue's medical record in its entirety. Contrastingly, the Commissioner maintains that substantial evidence in the record supports the ALJ's conclusions. The Court agrees with the Commissioner.

**A.    Substantial evidence supports the weight assigned to the medical opinions of Dr. Searle and CNP Thersleff.**

### 1.    Treating physician—Dr. Maradeth Searle.

Vue contends that the ALJ failed to properly evaluate the medical evidence because she neglected to give sufficient weight to the opinion of Vue's treating physician, Dr. Searle. Generally, a treating physician's opinion is entitled to great weight. 20 C.F.R. § 404.1527(d)(2). If it is found "that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," the ALJ will give it "controlling weight." 20 C.F.R. § 404.1527(d)(2).

However, a treating physician's opinion is only due great weight if it is thoroughly reasoned and uncontradicted by other substantial evidence. *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) (an ALJ is entitled to reject a treating physician's opinion if it is inconsistent with the record as a whole); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Consistent with the regulations, we have stated that a treating physician's opinion is normally entitled to great weight, but we have also cautioned that such an opinion does not automatically control, since the record must be evaluated as a whole.") (internal citations and quotations omitted). The ALJ must "always give good reasons . . . for the weight [she attributes to the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Specifically, when giving a treating physician's opinion less than controlling

weight, an ALJ must consider 20 C.F.R. § 404.1527(d) factors, including: (1) the length and frequency of the relationship; (2) the consistency of the opinion with other evidence; (2) the degree of support provided for the opinion; (4) the quality of the explanation provided for the opinion (5) the source's specialization; (6) any other factors that support or detract from the opinion. 20 C.F.R. § 404.1527(d); SSR 06-03p.

Here, the ALJ did not err in rejecting Dr. Searle's opinion as it was inconsistent with the record as a whole. *See McCoy*, 648 F.3d at 616. For example, Dr. Searle concluded in a November 2011 medical source statement that Vue was unable to fulfill almost all of the mental demands of unskilled and semi-skilled work, with the exception of being able to "ask simple questions or request assistance." AR 594-95. However, as noted by the ALJ, Dr. Searle's opinion regarding the functioning capacity of Vue was contradicted by her own treatment records. AR 27. Throughout Dr. Searle's treatment history of Vue, Dr. Searle stated that Vue's depression resulted in only "mild" to "moderate functional issues." AR 457, 459, 461, 463, 465. Such evaluations are in direct contrast with Dr. Searle's ultimate conclusion in her November 2011 medical source statement. AR 594-595; *see also Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

The ALJ also pointed to Vue's improving symptoms and her daily activities when concluding that Dr. Searle's opinion was inconsistent with the "larger record." AR 27-28. The ALJ emphasized a change of Vue's medications in March 2011, which resulted in "improved sleep and mood."[2] AR 27. Several aspects of Dr. Searle's own progress notes reflect these improved

---

[2]    CNP Thersleff placed Vue on Trazodone and Sertaline in March 2011. AR 580.

symptoms. Specifically, Dr. Searle's March 2, 2011 progress note states that "client is more hopeful, talked about changing weather and what she enjoys doing. . .grocery shopping with her daughter, going to the flea market. In the summer she likes to grow a few things in the garden such as cilantro and green onions. She also enjoys the visits of her cousin and sister." AR 447. Additionally, Dr. Searle identified Vue's affect in the March 2 progress note as "less withdrawn." *Id*. Notes from May and June of 2011 indicate that Vue frequently walked around Lake Phalen, ate three meals a day, and was sleeping better with the assistance of her medication. AR 459, 461, 463, 465. In Dr. Searle's final two progress notes (dated June 22, 2011 and July 27, 2011), she identified Vue's affect as "appropriate" and her mood as "calm, focused." AR 463-466. Further, the record as a whole indicates that Vue could accomplish a variety of daily activities including visiting with friends (AR 166); completing physical therapy exercises (AR 156); cooking simple meals (AR 158); bathing (AR 157); gardening (AR 449, 581); and attending Hmong cultural events (AR 469).

Accordingly, Dr. Searle's opinion as a treating physician is not entitled to great weight because substantial evidence in the record contradicts her opinion that Vue was unable to fulfill the requisite mental demands of unskilled and semi-skilled workers.

### 2. "Other medical source"—CNP Carol Thersleff.

Vue additionally argues that the ALJ erred by failing to properly evaluate the opinion of certified nurse practitioner and therapist Carol Thersleff. Again, Vue contends that the ALJ neglected to offer good reasons for rejecting CNP's Thersleff's examining opinion.

As a certified nurse practitioner, Carol Thersleff is considered an "other medical source" in the context of the Social Security Regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). The regulations distinguish between "acceptable medical sources" and "other sources." 20 C.F.R. §§

401.513(a) and 404.513(d). Other medical sources include nurse-practitioners, physicians' assistants, and therapists. 20 C.F.R. § 404.1513(d)(1)-(4). According to the regulations, evidence provided by other medical sources "cannot establish the existence of a medically determinable impairment," SSR 06-3p. Information provided by these sources may "be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Clark v. Astrue*, 769 F. Supp. 2d 1172, 1187 (N.D. Iowa 2011) (internal citations omitted). To determine the weight assigned to the opinion of "other sources," the ALJ should consider the same factors used to determine the weight granted to the opinion of acceptable medical sources. SSR 06-03p; 20 C.F.R. § 404.1527(d). However, when evaluating "other medical evidence," the ALJ is entitled to significant discretion and may consider any discrepancies found in the record. *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

CNP Thersleff saw Vue on five occasions prior to completing her medical source statement in October 2011. AR 585. CNP Thersleff concluded that Vue was either very limited or unable to satisfy the mental demands of semi-skilled and unskilled labor. AR 587-89. The ALJ, however, found that this opinion was entitled to less weight. AR 27.

The ALJ's decision to discount CNP Thersleff's opinion is supported by substantial evidence in the record. Again, the ALJ pointed to perceived improvements in Vue's symptoms over time and inconsistencies between CNP Thersleff's medical source statement and her own treatment records. AR 27-28. CNP Thersleff altered Vue's medication in March 2011, after which CNP Thersleff consistently observed that Vue's behavior was cooperative and she demonstrated logical speech, thought processes, and appropriate affect. AR 581-84. An early March 2011 assessment labeled Vue's mood as "depressed," but subsequent assessments authored by CNP Thersleff in April through

August 2011 identify Vue's mood as "neutral." AR 576, 581-84.

Because an ALJ is entitled to significant discretion when considering the opinion of "other medical sources," the Court concludes that the ALJ properly limited the weight of CNP Thersleff's opinion when considering discrepancies in the record as a whole. *See Raney*, 396 F.3d at 1010.

### 2. Substantial evidence supports the weight assigned to the medical opinions of Drs. Frederiksen and Nelsen.

The ALJ gave the opinions of  Dr. Frederiksen and Dr. Nelsen great weight. AR 26. Vue argues that the ALJ erred by relying on these state agency consultants' opinions because neither doctor saw Vue in person and Vue's records were reviewed approximately 19 and 15 months prior to the ALJ's decision.

"[T]he opinions of nonexamining sources are generally, but not always, given less weight than those of examining sources." *Willcokson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008). However, an ALJ can award a state agency consultant's opinion more weight if that opinions is supported by evidence in the record. *Davis v. Apfel*, 239 F.3d 962, 967-68 (ALJ properly based an RFC finding on the state agency medical consultant's opinion as it was supported by evidence and other examining physicians' opinions were inconsistent and unreliable). While the opinion of a non-examining physician does not constitute substantial evidence independently, an ALJ may permissibly consider such an opinion as one aspect of a broader record." *Johnson v. Astrue*, No. 10-cv-4373-DWF-JJG, 2012 WL 1004992, at *8 (D. Minn. Mar. 26, 2012). If an ALJ concludes that a treating physician's opinion is not entitled to controlling weight, the ALJ must "explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

Here, the ALJ articulated specific reasons for awarding the non-examining state consultants'

opinions great weight—specifically, that the consultants opinions were consistent with the "whole record regarding the claimant's mental impairments. . . ." AR 26. It is clear that the ALJ did not rely on these opinions as the sole substantial evidence for determining the RFC, but rather considered the opinions within the context of the entire record. The ALJ additionally relied on evidence of Vue's daily activities (AR 18), improvement with medication (AR 27), and the medical evidence in total (AR 26-28).

It is immaterial that Drs. Frederiksen and Nelsen did not have the benefit of reviewing the entire medical record prior to issuing their mental RFC assessments. "The fact that [a state agency medical consultant] did not have access to all of the records . . . does not prevent the ALJ from assigning significant weight to [the consultant's] assessment if the ALJ conducted an independent review of the evidence, which included notes the consultant had not considered." *Carter v. Astrue*, 886 F. Supp.2d 1093, 1112 (N.D. Iowa, 2012); *see also Thacker v. Astrue*, No. 3:11-cv-246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician[s] did not have access to the entire evidentiary record—because the record was incomplete at the time of the assessment—is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.").

Dr. Frederiksen reviewed Vue's record through March 24, 2010, prior to authoring her medical RFC assessment in June 2010. AR 379-80. Dr. Nelsen reviewed the same evidence and concurred with Dr. Frederiksen's conclusion that Vue was either "not significantly limited" or only "moderately limited" in areas correlated with understanding and memory, sustained concentration and persistence, social interaction, and adaption. AR 416-18. Although Drs. Frederiksen and Nelsen reviewed only a portion of Vue's medical record, it is apparent that the ALJ independently reviewed

the entire medical record.  This independent review of the medical record in total is evident with the ALJ's special emphasis on Vue's March 2011 medication change, which resulted in improved sleep and mood. AR 27.[3]

Given that the ALJ reviewed the non-examining state consultants' opinions in the context of the entire medical record, it was not improper for her to attribute "great weight" to the opinions.

## V.  CONCLUSION

If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig*, 212 F.3d at 436). Here, substantial evidence supports the ALJ's finding to give less weight to the treating opinions of Dr. Searle and CNP Thersleff and great weight to the opinions of state consulting physicians, Drs. Frederiksen and Nelsen. Accordingly, the Commissioner's Motion for Summary Judgment should be granted.

## VI.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (ECF No. 11) be **DENIED**;

2.    Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED**;

---

[3]
    The Court notes that, even if the state consulting physicians received the benefit of reviewing the entire medical record, their conclusions would likely remain unchanged due to the evidence on the record indicating Vue's symptom improvement. Subsequent treatment notes indicate an improvement of Vue's mood with medication (AR 576, 581-84); normal mental status exams (AR 581-84); and an increase in Vue's daily activities (AR 447, 459, 469, 581).

3.     The Commissioner's decision be **AFFIRMED** and the case **DISMISSED WITH**

**PREJUDICE**.


DATED: February 7, 2014                      _s/Franklin L. Noel_
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 21, 2014**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **[same date as above]** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.